IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Nickey Gregory Company, LLC, ) | | |
| and Poppell's Produce, Inc., ) | | |
| ) | | |
| Plaintiffs, ) | C.A. No. 6:07-3605-HMH | |
| ) | | |
| vs. ) | **OPINION & ORDER** | |
| ) | | |
| AgriCap, LLC, a/k/a AgriCap Financial ) | | |
| Corporation, ) | | |
| ) | | |
| Defendant. ) | | |

This matter is before the court on a motion for summary judgment by Plaintiffs Nickey Gregory Company, LLC ("Nickey Gregory"), and Poppell's Produce, Inc. ("Poppell's Produce"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. Upon due consideration, and for the reasons set forth herein, the Plaintiffs' motion is denied.

**I. Factual and Procedural Background**

**A. An Overview of the Governing Statutory Regime**

This is an action arising under the Federal Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a-499s ("PACA"), a statutory regime designed to ensure that growers and sellers of perishable agricultural commodities, such as fresh fruits and vegetables, receive prompt payment for their goods. PACA's objectives are accomplished through the imposition of a statutory trust in favor of the growers and sellers of perishable agricultural commodities. Id. § 499e(c)(2). A PACA trust arises naturally when perishable commodities are received, through sale or otherwise, by wholesalers of agricultural goods; that is, the "commission merchants," "dealers," and "brokers," as PACA defines those terms. Id. §§ 499a, 499e(c)(2).

With the creation of every trust, there arises a trustee and a trust beneficiary. PACA trusts are no different. Because PACA trusts are created in favor of growers and sellers of perishable agricultural commodities, those growers and sellers are said to be the beneficiaries of the PACA trust. Id. § 499e(c)(2). The trustee is the wholesaler. Id. The assets of the trust consist of "perishable agricultural commodities received in all transactions, all inventories of food or other products derived from such perishable agricultural commodities, and all receivables or proceeds from the sale of such commodities and food or products derived therefrom." 7 C.F.R. § 46.46(b); see 7 U.S.C. § 499e(c)(2). The trust must be preserved until full payment has been made to the growers and sellers. 7 U.S.C. § 499e(c)(2).

PACA trusts are nonsegregated and "floating." 7 C.F.R. § 46.46(b). Because they are nonsegregated, commingling PACA trust assets with non-trust assets is permissible. Id. In fact, PACA trust assets may be used to pay non-PACA creditors. See, e.g., D.M. Rothman & Co. v. Korea Commercial Bank, 411 F.3d 90, 94 (2d Cir. 2005) (citation omitted). Because PACA trusts are floating, it is expected and intended that the form of the assets comprising the trust will change over time. Accordingly, the duty imposed upon wholesalers, as PACA trustees, is not to strictly preserve trust property. It is only necessary that wholesalers "maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(d)(1).

PACA trustees are directed to refrain from dissipating trust assets. Id. "Dissipation" is defined as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers [or] sellers . . . to recover money owed in connection with produce transactions." Id. § 46.46(a)(2). Other aspects of trust administration

and fiduciary obligation are guided by principles of general trust law. See, e.g., Albee Tomato, Inc. v. A.B. Shalom Produce Corp., 155 F.3d 612, 615 (2d Cir. 1998).

Wholesalers are required to make "full payment promptly" to unpaid trust beneficiaries. 7 U.S.C. § 499b(4). Unless otherwise modified by the parties, full payment promptly generally means that the wholesaler must pay for the produce within ten days of acceptance. 7 C.F.R. § 46.2(aa)(5), (11). However, in no event may the period allowed for making full payment be extended beyond thirty days of receipt. Id. § 46.46(e)(2). If the period is extended beyond thirty days, then growers and sellers are no longer eligible to participate in PACA. Id.

### B. The Business of Nickey Gregory and Poppell's Produce with Robison Farms, LLC

Nickey Gregory and Poppell's Produce are Georgia corporations engaged in the business of buying and selling perishable agricultural commodities. Among their customers was Robison Farms, LLC ("Robison Farms"). From May through July 2006, Nickey Gregory and Poppell's Produce did a substantial amount of business with Robison Farms. It is alleged that Nickey Gregory sold an amount of produce to Robison Farms worth $75,557.75, and that Poppell's Produce sold an amount worth $44,775.22.

In order to qualify for participation in the PACA trust, sellers and suppliers of perishable agricultural commodities must give written notice of their intent to preserve the benefits of the trust to the wholesaler within thirty calendar days of certain specified events. 7 U.S.C. § 499e(c)(3). One event occurs upon the "expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary [of Agriculture]." Id. Generally, federal regulations provide ten days from acceptance within which to make payment.

3

7 C.F.R. § 46.2(aa). Regarding content, the written notice "shall set forth information in sufficient detail to identify the transaction subject to the trust." 7 U.S.C. § 499e(c)(3).

Each of the invoices issued by Nickey Gregory and Poppell's Produce contains the following statement:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. § 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

This statement is identical to the statement set forth in 7 C.F.R. § 46.46(f)(3), regarding the form and content of sufficient notice. Because the statement of notice of intent was set forth on the face of each invoice, it is fair to say that Robison Farms received the statement safely within the notice period.

In addition, each of the invoices issued to Robison Farms, whether by Nickey Gregory or Poppell's Produce, states that payment must be made by "Net 21 Days." Although it is not stated anywhere, it is presumed that each invoice was delivered to Robison Farms in connection with the produce that was ordered, and that the period of "Net 21 Days" began to run from the date of delivery. Therefore, with regard to its business with Nickey Gregory and Poppell's Produce, Robison Farms was required to make full payment for its purchase orders within three weeks of the date that the orders were filled.

### C. The Business of Robison Farms with AgriCap, LLC

Robison Farms was a distributor of perishable agricultural commodities. Customers of Robison Farms would request the procurement of certain produce, and Robison Farms would

source and fill those requests. It is not known what payment terms Robison Farms generally imposed upon its customers, and specifically, the length of delay between invoice and payment.

As previously mentioned, Robison Farms was obligated to pay some of its suppliers (at least Nickey Gregory and Poppell's Produce) within twenty-one days of invoice. This placed Robison Farms in the difficult position of obtaining payment from its customers in less than twenty-one days, in the absence of any further financing arrangements, or of paying its suppliers from its own accounts for the credit of its customers.

During March 2005, Robison Farms contacted AgriCap, LLC ("AgriCap"), a California-based financial corporation, to discuss how Robison Farms could better structure its financial practice. AgriCap engaged in a comprehensive examination of Robison Farms' business operations, which included a review of Robison Farms' books, as well as an on-site inspection. AgriCap subsequently entered into a Factoring Agreement with Robison Farms.

Pursuant to the Factoring Agreement, AgriCap would purchase certain accounts receivable arising from transactions between Robison Farms and its customers at a price that was slightly discounted from the gross amount of those receivables. Specifically, AgriCap would discount the gross amount of purchased receivables by 1.5% during the first thirty days that the account was outstanding, and a further 0.10% per day for each day thereafter that the account remained outstanding. The Factoring Agreement further provided that a $2.25 minimum discount charge per factored invoice would apply.

In exchange, AgriCap would advance 80% of the gross amount of purchased receivables to Robison Farms immediately. The remaining 20% would be held by AgriCap while purchased receivables remained outstanding. Upon full payment of purchased receivables, AgriCap would

tender the remaining 20% to Robison Farms, less certain accrued fees and interests.[1]  Later, AgriCap would agree to advance 90% of gross receivables to Robison Farms and hold only 10% in reserve.

Several other agreements were executed in conjunction with the Factoring Agreement. Among them was a Security Agreement, which established a continuing lien and security interest in the assets of Robison Farms, and a Guaranty Agreement, which personally obligated Cindy C. Robison to guarantee payment and performance of Robison Farms' obligations under the Factoring Agreement.

### D.  Robison Farms Ceases Business Operations

Robison Farms and AgriCap continued in this financial relationship for more than one year.  By May 2006, however, Robison Farms had become unable to pay its suppliers.  On July 18, 2006, AgriCap was notified that Robison Farms would be permanently ceasing business operations.  AgriCap immediately ceased its purchase of Robison Farms' accounts receivable.

Over the course of their relationship, AgriCap reportedly purchased, in the aggregate, an amount of Robison Farms' accounts receivable totaling $4,053,596.21.  For its services, AgriCap earned $81,799.68.  In sum, Robison Farms grossed $3,964,905.46 on the sales of its accounts receivable, most of which was used to pay its suppliers.  Nowhere is it alleged that AgriCap ever assumed any of Robison Farms' assets pursuant to the Security Agreement.

At the time when Robison Farms ceased business operations, fourteen of its suppliers, including Nickey Gregory and Poppell's Produce, had outstanding PACA trust account claims

---

[1] AgriCap asserts that the effective purchase price of Robison Farms' accounts receivable proved to be 97.8%.

totaling $716,173.89. Only $83,606.47 was recovered from Robison Farms' trust account for the satisfaction of PACA claims. After fees and costs of collection, a total of $71,873.87 was disbursed pro rata among all PACA claimants. It is alleged that Nickey Gregory is still owed $66,411.25, and that Poppell's Produce is owed $44,725.22. For the satisfaction of their accounts, the Plaintiffs have sued AgriCap for what is primarily a claim for unlawful receipt and retention of PACA trust assets.[2]

### E. Procedural Posture

This civil action was commenced on November 2, 2007. On July 7, 2008, Nickey Gregory and Poppell's Produce moved jointly for summary judgment against AgriCap. AgriCap filed a timely responsive brief to the Plaintiffs' motion, though it did not file its own counter-motion for summary judgment. The Plaintiffs have since replied. The arguments of the parties are before the court, and the matter is ripe for decision.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Consistent with Rule 56, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

---

[2] Nickey Gregory and Poppell's Produce have also brought claims for declaratory judgment and for expenses, costs, and attorneys' fees.

In deciding whether there is a genuine issue of material fact, the court must view all facts, and all reasonable inferences drawn from those facts, in the light more favorable to the party opposing summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.

"When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). With respect to this burden, it is the responsibility of the nonmoving party, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the moving party's summary judgment motion. See, e.g., Malina v. Baltimore Gas & Elec. Co., 18 F.Supp. 2d 596, 604 (D. Md. 1998).

### B. Consideration of the Plaintiffs' Claims

The central claim of the Complaint is that AgriCap has unlawfully received and retained assets of Robison Farms' PACA trust. In order to prevail upon this claim, the Plaintiffs must show: (1) that Robison Farms breached the PACA trust by entering into a financing arrangement with AgriCap, see, e.g., E. Armata, Inc. v. Korea Commercial Bank, 367 F.3d 123, 132 (2d Cir. 2004); Am. Banana Co. v. Republic Nat'l Bank, 362 F.3d 33, 41 (2d Cir. 2004); (2) that AgriCap may be held liable for the inability of Robison Farms to pay its suppliers, American Banana, 362 F.3d at 41; Albee Tomato, Inc. v. A.B. Shalom Produce Corp., 155 F.3d

612, 616 (2d Cir. 1998); Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 1000 (11th Cir. 1997); and (3) that in the event AgriCap is found liable for contributing to the dissipation of trust assets, no affirmative defenses may be successfully asserted, American Banana, 362 F.3d at 41.

In large part, the question of whether a breach of trust was committed by the entry into a third-party financing agreement turns on whether the terms of that agreement are commercially reasonable. See, e.g., E. Armata, 367 F.3d at 133-34; American Banana, 362 F.3d at 41; Boulder Fruit Express v. Transp. Factoring, Inc., 251 F.3d 1268, 1271-72 (9th Cir. 2001). Often, the terms of financing agreements will vary depending upon the commercial environment of their creation and the circumstances unique to each situation. The reasonableness of any particular agreement, then, can only be measured with reference to the context of its creation; and that requires an examination of the totality of the circumstances.

It is rare, but possible, to show that the structure of certain financing agreements is not commercially reasonable as a matter of law. See, e.g., Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co., 336 F.3d 410 (5th Cir. 2003); Endico Potatoes, Inc. v. CIT Group / Factoring, Inc., 67 F.3d 1063 (2d Cir. 1995). This is not to say that a PACA trustee commits a breach of trust merely by entering into a financing agreement involving trust assets, which is the so-called "per se breach" theory. The central purpose of PACA, which is to make payment to growers and sellers of produce, is commonly enhanced by a trustee's participation in financing agreements. See, e.g., E. Armata, 367 F.3d at 133-34 ("Indeed, it is difficult to imagine how a PACA trustee would make funds available to its PACA creditors without entering into some such relationship with a [third-party financial corporation]."). Accordingly, and by compelling logic, the theory of the per se breach has been explicitly rejected. Boulder Fruit, 251 F.3d at 1271-72.

Instead, the proper focus of the inquiry of an agreement's commercial reasonableness is upon its particular terms. Id. at 1271. In this case, Nickey Gregory and Poppell's Produce have neglected to come forward with dispositive evidence that Robison Farms' agreement with AgriCap failed to meet standards of commercial reasonableness. Alternatively, AgriCap has provided sworn statements that attest to the commercial reasonableness of this particular transaction. At best, there is a genuine issue of material fact regarding the commercial reasonableness of Robison Farms' financing agreement with AgriCap. And even in the absence of a genuine factual issue, the court is not convinced that the Plaintiffs would be entitled to judgment as a matter of law.

Even if the court were to assume that Robison Farms' entry into the financing agreement resulted in a breach of trust, there is still the matter of whether AgriCap, as a third party, can be held liable for that breach. As a general proposition, third parties are not guarantors of PACA trust assets. American Banana, 362 F.3d at 41; C.H. Robison Co. v. Trust Co. Bank, N.A., 952 F.2d 1311, 1316 (11th Cir. 1992). But through their conduct, third parties can become liable. See, e.g., Reaves Brokerage Co., 336 F.3d 410; Endico Potatoes, 67 F.3d 1063. Generally, such liability arises when trust property is taken by a third party with knowledge that the property belongs to the trust, or when the third party fails to pay value for the trust property. C.H. Robinson Co., 952 F.2d at 1315.

In this case, it appears that AgriCap took assets subject to the Robison Farms' trust with knowledge that they belonged to the trust. To be fair, it was the nature of AgriCap's business to do so. However, it appears that AgriCap ceased doing business with Robison Farms once it learned of Robison Farms' inability to pay its suppliers. Cf. Consumers Produce Co. v. Volante

10

Wholesale Produce, Inc., 16 F.3d 1374, 1383 (3d Cir. 1994). As a final observation, the court is not persuaded that AgriCap failed to pay value for Robison Farms' accounts receivable. See, e.g., C.H. Robison Co., 952 F.2d at 1314. Each of these factors touches and concerns AgriCap's exposure to liability, and it cannot be said that the factual matters are well-settled or that the Plaintiffs are entitled to judgment as a matter of law.

Even if the court were to assume that AgriCap could be held liable for acquiring trusts assets improperly, AgriCap may still be shielded from liability through the intervention of certain affirmative defenses. See, e.g., American Banana, 362 F.3d at 42-49. The court is not willing upon the facts before it to declare that AgriCap cannot prevail upon any potentially applicable affirmative defenses.

It is possible that AgriCap could have breached the PACA trust in some other way, as by forcing a transfer of the assets of Robison Farms' trust pursuant to the Security Agreement. Certainly, such conduct would give rise to AgriCap's liability. C.H. Robinson, 952 F.2d at 1315-16; In re Gotham, 669 F.2d 1000, 1009 (5th Cir. 1982). However, there is no evidence that AgriCap ever took any of Robison Farms' trust assets pursuant to the Security Agreement. In fact, it does not even appear that the Plaintiffs have alleged the occurrence of such an event.

### III. CONCLUSION

The Plaintiffs' burden is to convince the court that there are no genuine issues of material fact remaining to be decided, and that they are entitled upon those facts to judgment as a matter of law. The court is convinced of neither. For the foregoing reasons, the Plaintiffs' motion for summary judgment, docket number 39, is denied.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
September 2, 2008